CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
5/13/2024
LAURA A. AUSTIN, CLERK
BY s/ S. MELVIN
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

**DIANE CRISTINA ROSARIO,**

 **Plaintiff,**

v.                                                                                     **Case No.**  3:24-cv-00033

**LEGAL AID JUSTICE CENTER,**                                **JURY TRIAL DEMANDED**

  Serve:  Scott Kroner, PLC, R/A
       418 East Waters Street
       Charlottesville, Virginia 22902

 **Defendant.**

## COMPLAINT

COMES NOW, Plaintiff, Diane Cristina Rosario, and files this complaint against Defendant Legal Aid Justice Center ("LAJC") and states the following in support thereof:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 2000e-5(f) ("Title VII").

2. The U.S. Supreme Court recently cemented an expansive view of adverse employment actions pursuant to Title VII analysis. *See, Muldrow v. City of St. Louis*, 144 S. Ct. 967, 972 (2024): "Although an employee must show some harm . . . to prevail in a Title VII suit, she need not show that the injury satisfies a significance test. Title VII's text nowhere establishes that high bar."

3. "What the [employee] does not have to show . . . is that the harm incurred was 'significant.' Or serious, or substantial, or any similar adjective suggesting that the

1

disadvantage to the employee must exceed a heightened bar. 'Discriminate against' means treat worse." *Id*. at 974.

4. Ms. Rosario also advances Virginia state claims pursuant to the Virginia Human Rights Act, Virginia Code § 2.2-3905.1, ("VHRA"). This Court possesses supplemental jurisdiction over Ms. Rosario's state law claims pursuant to 28 USC § 1367.

5. Ms. Rosario is domiciled in the City of Charlottesville, Virginia.

6. LAJC is a Virginia nonstock Corporation with its principal place of business in the City of Charlottesville, Virginia.

7. Venue is proper in this Court, as the acts and/or omissions substantially occurred within the Court's geographic area. See 28 U.S.C. § 1391(b)(2).

8. Ms. Rosario timely filed a complaint with the Office of the Attorney General of Virginia, Office of Civil Rights and the Equal Employment Opportunity Commission. Ms. Rosario received her Notices of Right to File a Civil Action from both agencies and Ms. Rosario files this lawsuit within 90 days of receipt of those notices.

9. This VHRA, as amended by the Virginia Values Act, makes it unlawful for employers to discriminate in making hiring, promotion, or termination decisions on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, sexual orientation, gender identity, military status, or disability. The VHRA also includes anti-retaliation provisions. It is unlawful for an employer to discriminate against any employee because such employee has engaged in a protected complaint under the Act.

## II. FACTS

10. Ms. Rosario began work in December 2017 with LAJC in Charlottesville, Virginia.

2

11. LAJC employed Ms. Rosario and was the full-time employer of Ms. Rosario.

12. First working in a temporary position, Ms. Rosario was thereafter hired into a permanent position with LAJC. Her most recent role was Legal Assistant/ICT Coordinator.

13. Ms. Rosario loved her job and was passionate about the work. During her employment with LAJC, Ms. Rosario's work performance excelled and met or exceeded LAJC's expectations.

14. However, Ms. Rosario began to experience hostile and discriminatory working conditions, including retaliatory behavior, after making a protected complaint of racial and color discrimination.

15. Ms. Rosario worked in an environment in which she observed employees that qualified as people of color ("POC") were treated differently than the majority Caucasian employees. Ms. Rosario identifies as a POC.

16. Ms. Rosario is of Hispanic/Latino race and is a POC.

17. Continuing, in April 2021, Ms. Rosario was threatened with disciplinary action for speaking too fast in meetings at which Ms. Rosario was tasked with leading conversations regarding racial equity.

18. Ms. Rosario speaks with a notable accent traditionally associated with Hispanic and Latino speakers. Ms. Rosario is fluent in Spanish and English.

19. One of Ms. Rosario's Caucasian co-workers with a hearing impairment complained that Ms. Rosario was purposefully speaking fast to exclude the co-worker from the conversations. The co-worker filed an accommodation request regarding Ms. Rosario with LAJC to that effect.

20.     Without making any attempt to work the issue out, Ms. Rosario was abruptly advised by LAJC that if she did not change the way she spoke during the meetings, she would be subject to discipline. The co-worker's accusation that Ms. Rosario was purposefully speaking fast to exclude her took Ms. Rosario by surprise as the accusation was false, and Ms. Rosario had not been speaking any differently than she always had.

21.     Therefore, when LAJC unfairly threatened her with discipline concerning the way Ms. Rosario spoke, Ms. Rosario questioned whether LAJC was acting in a discriminatory manner towards her, based on race and color. Ms. Rosario reported this to management and human resources.

22.     Ms. Rosario was able to successfully have the threat of disciplinary action withdrawn after meeting with the Executive Director, Angela Ciolfi, and explaining that her natural speaking pattern was fast as a result of her heritage and race.

23.     The response e-mail Ms. Rosario received from Ms. Ciolfi after meeting with her on April 27, 2021, urged Ms. Rosario to speak more slowly to accommodate her co-worker, which Ms. Rosario was happy to do, and assured Ms. Rosario that she would not be disciplined if she failed to change her pattern of speaking.  Looking forward, Ms. Rosario believed the matter to be resolved.

24.     However, after complaining of racial and color discrimination -- a protected activity under the VHRA and Title VII -- Ms. Rosario was subjected to hostile working conditions and retaliation in the workplace. One such example includes Ms. Rosario's direct supervisor, Elaine Poon, canceling all meetings with Ms. Rosario and refusing to meet with Ms. Rosario for several months.

25. Another example occurred when the position of office manager at LAJC came open in or about April 2021. Ms. Rosario, who was qualified for the position, decided to apply, particularly since it would have been a promotion for her. Ms. Rosario was one of only two candidates that applied for the position, but notably, Ms. Rosario was the only qualified candidate.

26. Ms. Rosario did not receive this position out of retaliation for her protected complaint.

27. In retaliation for Ms. Rosario's discrimination complaint, the hiring manager, Kyna Thomas, upon information and belief, was directed by the Executive Director not to hire Ms. Rosario.

28. Although other staff members from the interview requested to re-interview Ms. Rosario, they were told they could not do so. In fact, hiring committee member Dana Chavez questioned several times why the hiring committee was not being allowed to re-interview the only candidate that met the position qualification requirements, without explanation.

29. LAJC ultimately hired for the position a recent college graduate with no experience and no Spanish-speaking ability, completely ignoring that previous experience and the Spanish-speaking ability were requirements for the role. Ms. Rosario met the essential functions and qualifications of this position, and the new hire did not.

30. Because LAJC was very much aware that the newly hired office manager was not qualified for the job, LAJC added insult to injury by revising Ms. Rosario's job description to transfer to her the duties the new office manager was not qualified for, in addition to passing her over for the office manager position.

31. Ms. Rosario's job description was thereafter modified to include the addition of a majority of the tasks and responsibilities for the position for which she was denied. Thus, even though she was more qualified for the position, LAJC retaliated against Ms. Rosario by refusing to promote her, opting instead to hire an inexperienced and unqualified individual for the role, and then re-assigning a majority of the office manager job responsibilities to Ms. Rosario, without additional compensation.

32. In June of 2022, Ms. Rosario's mother passed away.

33. Ms. Rosario was working and training interns at the time of her mother's passing and she began bereavement leave immediately thereafter.

34. A week after starting bereavement leave, LAJC posted Ms. Rosario's position online, using a different job title, although the duties were Ms. Rosario's duties. Then, though Ms. Rosario previously had been informed that she could use all available PTO for an extended bereavement leave, Ms. Rosario was falsely advised that she had no leave available, and she was instructed to return to work before she ran out of leave on July 11, 2022.

35. However, Ms. Rosario had 174 hours of annual leave and 159 hours of health leave remaining. This was another intentional act taken by LAJC to harass Ms. Rosario.

36. The next month, in August 2022, Ms. Rosario tested positive for Covid. Although other LAJC staff members were routinely allowed to work from home when recovering from Covid, in stark contrast, Ms. Rosario was not allowed to work from home. Upon information and belief, up to that time Ms. Rosario was the only LAJC staff member who was not allowed to work from home due to Covid.

37. In response to her notification to LAJC of her positive test, Ms. Rosario's supervisor and HR emailed her on August 18, 2022, advising that Ms. Rosario did not

6

have any PTO at all, and they were checking the policy regarding allowing her take time off for Covid without pay. However, Ms. Rosario did have available PTO, a fact of which HR was aware as the accounting administrator provided Ms. Rosario's PTO information to HR several days earlier, on August 11, 2022.

38. Therefore, while out with Covid, Ms. Rosario worked a day without pay, although she was reimbursed after she was able to prove she had more than 150 hours of leave available. Ms. Rosario again complained and told her supervisor she felt this harassing behavior on the part of LAJC towards her was retaliatory and related to her earlier protected activity. Ms. Rosario engaged in a second protected activity by complaining of on-going retaliation and discrimination due to her engagement in protected activities.

39. LAJC increased its retaliatory conduct.

40. Ms. Rosario's supervisor became more aggressive and hostile. She treated Ms. Rosario less favorably with constant false criticisms and created rules and set unreasonable expectations that applied only to Ms. Rosario, thereby holding her to a more rigorous standard than the other assistants at LAJC. Examples included:

- Not being allowed to leave her desk without approval;
- Finding someone to cover her desk while away, even for meetings requiring her attendance;
- Being excluded from meetings that were required for her position, such as weekly case review;
- Assigned to complete work tasks that four separate people previously handled;
- Expected to return all calls from any day she was out of the office;

7

- The only staff member not allowed to work from home when sick with COVID; and,

- LAJC leadership began openly ignoring her in the presence of other staff members.

41. In addition, meetings were held about Ms. Rosario, to which she was not invited, and were posted to a publicly viewed calendar in order to embarrass and humiliate her.

42. In summary, after complaining to LAJC leadership about racial and color discrimination and retaliation, Ms. Rosario was subjected to harassment and other actions/behaviors as set forth above constituting an extremely hostile work environment.

43. No other staff members of LAJC were subjected to similar harassment, which was done for the sole purpose of retaliating against Ms. Rosario for complaining about racial and color discrimination.

44. Continuing, after Ms. Rosario endured months of harassment, never-ending retaliatory acts, and an increasingly hostile work environment, LAJC unlawfully terminated her employment on November 18, 2022.

45. Ms. Rosario was harmed by LAJC and treated worse than employees outside of protected classes.

**COUNT I: DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT, Va. CODE § 2.2-3905**

46. Ms. Rosario incorporates by reference the preceding paragraphs of this Complaint.

47. Pursuant to Va. Code 2.2-3905(B)(1)(a), "It is an unlawful discriminatory practice for [a]n employer to: . . . [d]ischarge, or otherwise discriminate against any

8

individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's . . . color . . . race . . . ."

48. LAJC's failure to promote and later termination of Ms. Rosario's employment was an unlawful discriminatory practice under Virginia law because the decisions were based upon Ms. Rosario's membership in a protected class and employees outside this class did not receive the same discriminatory treatment.

49. As a direct and proximate result of LAJC's actions, Ms. Rosario has suffered and will continue to suffer pecuniary loss, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

50. At all times material hereto, LAJC engaged in discriminatory practices with malice or reckless indifference to the statutorily protected rights of Ms. Rosario so as to support an award of punitive damages.

51. Pursuant to Va. Code 2.2-3908, "the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate."

**COUNT II: RETALIATION IN VIOLATION OF
THE VIRGINIA HUMAN RIGHTS ACT, Va. CODE § 2.2-3905**

52. Ms. Rosario hereby incorporates the previous allegations of this Complaint.

53. Pursuant to Virginia Code § 2.2-3905(B), "It is an unlawful discriminatory practice for: … (7)(i) An employer to discriminate against any employee … because such

9

individual has opposed any practice made an unlawful discriminatory practice by this chapter ....."

54. Ms. Rosario made good faith reports of discrimination in violation of the Virginia Human Rights Act.

55. LAJC violated state law when it retaliated against Plaintiff by wrongfully failing to promote Ms. Rosario in retaliation for her legitimate complaints of discrimination and then terminating her employment.

56. LAJC would not have taken these adverse actions against Ms. Rosario but for her protected activities.

57. Employees of LAJC were acting in the course and scope of their employment with LAJC at the time of their actions; therefore, LAJC is liable for its actions under the doctrine of *respondeat superior*.

58. Their actions against Ms. Rosario were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

59. As a direct and proximate result of LAJC's actions, Ms. Rosario has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

60. At all times material hereto, LAJC engaged in retaliatory practices with malice or reckless indifference to the statutorily protected rights of Ms. Rosario so as to support an award of punitive damages.

61. Prior to Ms. Rosario's failure to promote and employment termination, Ms. Rosario was performing her work at a satisfactory level and meeting or exceeding LAJC's legitimate business expectations.

62. Any reasons cited by LAJC for not promoting Ms. Rosario or for terminating Ms. Rosario's employment were pretextual as Ms. Rosario's work performance was meeting, if not exceeding, legitimate business expectations.

63. The above-described acts by LAJC constitute retaliation for making complaints about race and color discrimination, all in violation of the VHRA, Virginia Code § 2.2-3900, *et seq*.

64. As a result of LAJC unlawfully failing to promote Ms. Rosario and terminating Ms. Rosario's employment, Ms. Rosario has suffered financial losses, mental anguish, sleeplessness, loss of enjoyment of life, and other damages.

## COUNT III: CLAIM FOR TITLE VII RACE/COLOR DISCRIMINATION

65. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

66. At all times material hereto, LAJC had an obligation to maintain a work environment that was not charged with discrimination and hostile to Ms. Rosario and other POC employees.

67. LAJC violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Ms. Rosario and other POC employees.

68. LAJC employees acted in the course and scope of their employment with LAJC at the time of their actions; therefore, LAJC is liable for their actions under the doctrine of *respondeat superior*. Their actions against Ms. Rosario were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

69. As a direct and proximate result of the LAJC's actions, Ms. Rosario has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

70. At all times material hereto, LAJC engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Rosario so as to support an award of punitive damages.

71. Prior to Ms. Rosario's separation of employment with LAJC, Ms. Rosario was performing her work at a satisfactory level and meeting or exceeding LAJC's legitimate business expectations.

72. The above-described acts by LAJC constitute racial and color discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

73. Ms. Rosario is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT IV:  CLAIM FOR TITLE VII RETALIATION

74. Ms. Rosario incorporates by reference herein the preceding paragraphs of this Complaint.

75. At all times material hereto, LAJC had an obligation to maintain a work environment that was not charged with discrimination and hostile to Ms. Rosario and other POC employees.

76. Ms. Rosario engaged in the protected activity of complaining and reporting about a discriminatory work environment.

77. In direct retaliation for these complaints, Ms. Rosario has suffered instances of

retaliation, including but not limited to, further disparate treatment, alteration of job duties, ostracization, and an effective termination.

78. The above-referenced employees were acting in the course and scope of their employment with LAJC at the time of their actions, therefore, LAJC is liable for their actions under the doctrine of *respondeat superior*. Their actions against Ms. Rosario were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

79. As a direct and proximate result of Defendant's actions, Ms. Rosario suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

80. At all times relevant, Ms. Rosario performed her work at a satisfactory level, meeting or exceeding Defendant's legitimate business expectations.

81. At all times material hereto, Defendant engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Rosario so as to support an award of punitive damages.

82. The above-described acts by Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

83. Ms. Rosario is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Diane Cristina Rosario prays for judgment against Legal Aid Justice Center and for equitable relief, compensatory damages, punitive damages, together with prejudgment interest, post-judgment interest, back pay, front pay, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED ON ALL MATTERS IN WHICH A TRIAL MAY BE DEMANDED INCLUDING WHETHER THESE CLAIMS ARE SUBJECT TO AN ARBITRATION AGREEMENT.

             Respectfully Submitted,

             **DIANE CRISTINA ROSARIO**

             _____
             Thomas E. Strelka, Esq. (VSB # 75488)
             L. Leigh Rhoads, Esq. (VSB # 73355)
             VIRGINIA EMPLOYMENT LAW
             *Counsel for Plaintiff*

VIRGINIA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA  24018
Tel:  540-283-0802
thomas@vaemployment.law
leigh@vaemployment.law